W. M. POND AND HENRY COMLEY, *Partners as W. M.
   Pond & Co.* v. EDWARD E. BARTON AND FRANK
   BARTON, *Partners as The Barton Salt Company.*

### No. 385.

MISCONDUCT *of Prevailing Party.* The conduct of the prevailing
   party set forth, and held sufficient to require a reversal of the case.

Error from Reno district court; F. L. MARTIN,
judge.   Opinion filed February 17, 1899.   Reversed.

*John W. Roberts,* for plaintiffs in error.

*S. W. Leslie,* for defendants in error.

The opinion of the court was delivered by

SCHOONOVER, J.: This action was commenced in
the district court of Reno county by the Barton Salt
Company, against W. M. Pond & Co. to recover dam-
ages on a breach of contract, wherein it was claimed
that the latter agreed to furnish the Barton Salt Com-
pany with a certain grade and kind of lumber to be
used in the construction of a salt plant at Hutchinson,
Kan.   It was alleged:

"That they failed to comply with their undertaking
and contract in furnishing plaintiffs the kind and
character of lumber ordered by plaintiffs of them, but,
on the contrary, furnished a very inferior grade of
lumber, wholly unfit for the uses and purposes for
which the same was ordered; that the lumber so fur-
nished by defendants was and is full of knots, knot-
holes, pitch, rosin, turpentine, and tar; that said
lumber was not worth the freight by plaintiffs paid
thereon, and was much inferior in value to the lum-
ber by plaintiffs ordered of defendants, to wit, in the
sum of $1500; that by reason of the failure of defend-
ants to deliver said lumber in accordance with their
contract plaintiffs have been put to great annoyance

and expense in and about the building of said tanks or pans and the repairing of said salt plant, and by reason thereof will in the future be occasioned great loss and inconvenience by the constant repair necessary by the use of said lumber in said building ; that by the breach of the contracts and agreements of defendants plaintiffs have been damaged in the sum of $3000.

The case was tried to a jury and a verdict returned and judgment rendered in favor of the plaintiffs below for $210.77.   The defendants below bring the case here for review.   Several errors are assigned, but the misconduct of the jury and especially of the prevailing party, the plaintiffs below, while the jury were inspecting the plant, in the repair and construction of which the lumber in controversy was used, is such as to require a reversal of the case.   No other assignment of error will be considered.

Section 287, chapter 95, of the General Statutes of 1897 (Gen. Stat. 1889, ¶ 4372), provides :

" Whenever in the opinion of the court it is proper for the jury to have a view of the property which is the subject of litigation, or of the place in which any material fact occurred, it may order them to be conducted in a body under the charge of an officer to the place, which shall be shown to them by some person appointed by the court for that purpose.   While the jury are thus absent no person other than the person so appointed shall speak to them on any subject connected with the trial."

The testimony relating to the misconduct of the jury covers eighty pages of the record, and is too voluminous for a synopsis to be given.   It may be stated that the plaintiff below Barton, while the jury in charge of the bailiff were viewing the premises, intruded upon their presence, was officious in manner,

and insisted upon talking to the different jurymen about the lumber.  One witness testified :

"Ques.  You say that on the arrival of the jury that Barton conducted the jury from place to place ; I want to know just what Barton did do and what the jury did at the salt plant.  Ans.  Well, sir, my recollection is Mr. Barton, after we got inside, undertook to lead the boys around and show them different places where they had cleaned the salt off.

"Q.  I want to know what Barton said.  A.  He says : ' Here ! here !  Is this fir lumber?  This other is Texas pine.'  He designated the two kinds of lumber and told them this is so and so, and Mr. Keys, the bailiff, told him it was not necessary ; that his instructions were that he could not have anything to say to the jury at all ; but Mr. Barton persisted in going on.

"Q.  You follow him?  A.  No, sir ; we did n't all follow him ; we could not help it sometimes.

"Q.  I mean you individually?  A.  No, sir ; I did n't follow him.

"Q.  What else did Barton say, if anything, that you heard him say to you or to any of the jurors with you about the lumber or quality of the lumber?  A.  I did n't hear all he said, because I did n't keep anywhere very near him.  He came to me once ; I was pretty near the last man in going along ; I stopped to examine a knot in one of the tanks ; I had my knife picking through the crack.  I examined the knot to see whether it went through ; he came along and started to help me.  I told him : ' Mr. Barton, our instructions are to have no conversation with you or any other man ; I can examine this knot, and I can do it to satisfy myself without any help.'  He went away and said nothing more to me.

"Q.  Can you tell anything else from the time you left until you came back that Barton said to you ; I mean speak to you as an individual or any other juror in your presence that you heard?  A.  Well, when we left the tank and went on the outside on the tower Mr. Barton went ahead ; he was up on there with a

hammer and gave it to some of the jurors and wanted them to try and knock out some of the knots.   They made two or three attempts ; I could not see which one, but the knot would not come at all.   He tried it and the knot was solid and  he could not knock it out even with the hammer.''   ·

It appears from the record that the jury were in the salt plant inspecting the lumber for about one hour and a half ; that during this time the plaintiff below was with them, or a part of them, all the time, and that he pointed out to them the defects, designated the different kinds of lumber, and conversed with them freely during the time they were inspecting the property.   The evidence being fully considered, the conduct of the plaintiff, who was the prevailing party in the court below, cannot be tolerated.   It appears that he was admonished by a juror and by the bailiff, and fully informed of the instructions of the trial court.   His conduct was clearly in violation of the statute.

The judgment of the district court is reversed and a new trial ordered.